UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CONTI 11. CONTAINER SCHIFFAHRTS-GmbH & CO. KG *M.S. M.SC. FLAMINIA*, as Owner, and NSB NIEDERELBE SCHIFFAHRTSGESELLSCHAFT MBH & CO. KG, as Operator, of the vessel *M.S. MSC FLAMINIA,* | * | CIVIL ACTION |
| | * | NO. 2:15-cv-03704 |
| | * | SECTION "J" (3) |
| | * | JUDGE BARBIER |
| PLAINTIFFS | * | MAG. KNOWLES |
| VERSUS | * | |
| NEW ORLEANS TERMINAL, LLC, | * | |
| DEFENDANT | | |

\*       \*       \*       \*       \*       \*       \*       \*

MEMORANDUM IN SUPPORT OF NEW ORLEANS TERMINAL LLC'S 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND 12(f) MOTION TO STRIKE PLAINTIFFS' CONTENTION THAT THIS SUIT IS BROUGHT UNDER RULE F OF THE SUPPLEMENTAL RULES FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS

Defendant New Orleans Terminal, LLC ("NOT") is a marine terminal operator and stevedore in the Port of New Orleans.  (R. Doc. 1, Complaint, Article V).  In June and July 2012, NOT, acting as a terminal operator, received and stored certain chemical cargo, Divinylbenzene ("DVB") and Diphenylamine ("DPA"), at its open, outdoor terminal facility and, acting as a stevedore, loaded that cargo aboard the M/S MSC FLAMINIA. (R. Doc. 1, Articles V, XXV, XXXV and XXXVI).

1

Plaintiffs, the owner and operator of the FLAMINIA, filed this lawsuit against NOT more than three years later, on 21 August 2015, asserting admiralty and maritime causes of action under 28 U.S.C. §1333 and Federal Rule of Civil Procedure 9(h) for damages based on strict liability and/or negligence for failure to warn, general negligence, breach of warranty of workmanlike service, and indemnity and contribution in connection with a fire and explosion that occurred aboard the FLAMINIA on or about 14 July 2012 when the vessel was 1,000 nautical miles off the English Coast.  (R. Doc. 1, Article VIII).  As a result of this casualty, the FLAMINIA sustained significant damage, many cargo containers were severely damaged or lost, several crewmembers were injured, and three crewmembers died.  (R. Doc. 1, Articles IX and X).

Plaintiffs allege that the fire and explosion aboard the vessel were caused or contributed to by the acts or omissions of NOT in the storage and handling of the DVB cargo at the NOT terminal that was loaded aboard the FLAMINIA on or about 1 July 2012.  (R. Doc. 1, Articles XXVII, XXIII, XXXV and XXXVI).  Plaintiffs acknowledge that the cause of the explosion and fire is "currently under investigation."  (R. Doc. 1, Article XVI).

In December 2012, two separate civil actions were filed in the United States District Court for the Southern District of New York against plaintiffs for damage to the cargoes aboard the FLAMINIA at the time of the casualty.  (R. Doc. 1, Article XIII). Importantly, on or about 7 December 2012, plaintiffs filed a Limitation of Liability

Action in the United States District Court for the Southern District of New York seeking exoneration from or limitation of liability as well as protection under the fire defense in the U. S. Limitation Act, 46 USC §30501, *et seq.* (R. Doc. 1, Article XIV). The original civil actions and the Limitation Action have been consolidated in proceedings in the Southern District of New York, Civil Action No. 12-CV-8892 (SAS). (R. Doc. 1, Articles XIII, XIV and XV).

Significantly, plaintiffs did <u>not</u> sue NOT in the litigation pending in the Southern District of New York. Since December 2012, very extensive discovery has taken place in the New York proceedings, including approximately 85 depositions and the production of a million pages of documents by the various parties. NOT has not participated in any of that discovery and was not represented at any of those depositions, except the depositions of NOT and three of its employees, in late 2014 and October 2015.

NOT now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of plaintiffs' claims for failure of plaintiffs to state a cause of action because it is evident from plaintiffs' Complaint that all of the claims asserted in this maritime action are barred by the doctrine of laches. Additionally, NOT moves for dismissal under Rule 12(b)(6) of plaintiffs' five causes of action for the individual reasons set forth in this memorandum. Further, NOT moves to strike, pursuant to Federal Rule of Civil Procedure 12(f), all of plaintiffs' allegations and references in the Complaint that this suit is brought under Rule F of the Supplemental Rules for Admiralty and Maritime Claims

and Asset Forfeiture Action ("Supplemental Admiralty Rules").

Accordingly, for the reasons set forth in this memorandum, this Court should grant NOT's Rule 12(b)(6) motion and dismiss all of plaintiffs' claims. Alternatively, the Court should grant NOT's Rule 12(f) motion and strike plaintiffs' Rule F allegations in the Complaint.

## LAW AND ARGUMENT

In a Rule 12(b)(6) motion, the district court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff. See *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), supplementing its decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007), stated that Federal Rule of Civil Procedure 8:

> demands more than unadorned, the-defendant-unlawfully-harmed-me accusation . . . a pleading that offers 'labels and conclusions" or "a formulistic recitation of the elements of a cause of action will not do." ...
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Id. at 678. (citations and quotation omitted).

4

In *Twombly*, the Court emphasized:

> A plaintiff's obligation to provide "grounds" of his
> "entitle[ment] to relief" requires more than labels, and a
> formulaic recitation of the elements of a cause of action will
> not do . . . Factual allegations must be enough to raise a right
> to relief above the speculative level.

550 U.S. at 555-556.  (citations omitted).  Based on *Iqbal* and *Twombly*, although a court

considering a 12(b)(6) motion must accept well pleaded facts of the Complaint as true,

legal conclusions are not entitled to the same assumption of truth and, importantly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Iqbal*, 556 U.S. at 678; see also, *Twombly*, 550 U.S. 561-64.

Thus, plaintiffs are obligated to establish in their Complaint that the elements of

each cause of action, including that a legal duty was owed to plaintiffs, are factually and

legally supported.  As the Sixth Circuit recently stated in *Sam Han v. University of

Dayton*, 541 Fed. Appx. 622, 625 (6th Cir. 2013) concerning the post-*Twombly* and *Iqbal*

12(b)(6) motions:

> A complaint will be dismissed pursuant to Rule 12(b)(6) <u>if no
> law supports the claim made</u>, if the facts alleged are
> insufficient to state a claim, or if the face of the complaint
> presents an insurmountable bar to relief.  (Emphasis added).

Applying *Iqbal* and *Twombly* to the plaintiffs' Complaint, NOT maintains that its

12(b)(6) motion should be granted.

1.     **A Rule 12(b)(6) Motion is a Proper Procedural Method  to Seek Dismissal of All Claims Based on Laches**

The Fifth Circuit has concluded that a statute of limitations defense, which is similar to a laches defense, is properly brought before the Court on a 12(b)(6) motion:

> A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.

*Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

As recently as October 2015, the Fifth Circuit, in *King-White v. Humble Independent School District*, 803 F.3d 754, 758 (5th Cir. 2015), endorsed a party's Rule 12(b)(6) motion to dismiss claims in a complaint based on a time bar argument.  In *King-White*, the district court granted a motion to dismiss a Title 9 and Section 1983 discrimination suit, where the federal statute did not provide the limitation period and the court was required to "borrow" an appropriate statute of limitations from state law.  *Id*. Looking to Texas state law, the court held that the applicable limitation period was two years. *Id*.  The *King-White* court concluded that the district court correctly granted the 12(b)(6) motion and dismissed the plaintiff's Title 9 and Section 1983 claims because it was clear from the complaint that the alleged discrimination occurred more than two years before the plaintiff filed suit and, therefore, those claims were time barred.

Likewise, in *Thompson v. Deutsche Bank National Trust Co.*, 775 F.3d 298, 302 (5th Cir. 2014), the Fifth Circuit recognized that while a statute of limitations defense

6

usually is pled as an affirmative defense, it may support dismissal under Rule 12(b)(6) where it is evident from the pleadings that the claim has tolled.  The Fifth Circuit concluded that in a case challenging the adequacy of a bank loan, it could "unmistakably discern that the limitation period has run by consulting the face of the petition . . . The petition was stamped as filed in state court on April 9, 2012, over six years after the closing of the loan.  Thus, on its face, the limitation period has run, and the Thompsons are barred from pursuing this action."

While the defense of laches also is generally raised as an affirmative defense in an answer, several courts have recognized it is appropriate in certain situations to raise it by a Rule 12(b)(6) motion:

> In certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss.

*Lennon v. Seaman*, 63 F.Supp. 2d 428, 439 (S.D.N.Y. 1999); see also, *Oshiver v. Levin Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).  NOT maintains this is one of the circumstances when a 12(b)(6) dismissal on the bases of laches is appropriate.

It is evident from the allegations of the Complaint that all of plaintiffs' claims arose over three years before plaintiffs filed the present Complaint.  Those claims are, therefore, self-evidently time barred under Louisiana's one year prescriptive period, the

analogous state time period for determining the laches defense in this case.  Significantly, plaintiffs' Complaint does not establish any bases for the plaintiffs' excessive delay in filing suit against NOT or the absence of prejudice to NOT by this late filing.  Nor could plaintiffs possibly excuse their delay or deny the obvious prejudice to NOT, given that plaintiffs have vigorously and extensively litigated these same claims against numerous other parties, but <u>not</u> NOT.  Thus, NOT maintains that its 12(b)(6) motion is appropriate under the circumstances, and this Court should dismiss all of plaintiffs' claims.

2.      <u>Rule 12(b)(6) Compels Dismissal of All of Plaintiffs' Claims Based on Laches</u>

United States admiralty courts apply the doctrine of laches to determine whether a suit is time barred.  See, *The Key City*, 81 U.S. (14 WALL), 653 (1871).  Laches is an equitable doctrine that is a flexible measure of time within which an admiralty action must be brought when there is no specific statutory time limit for filing a particular maritime suit.  *Gardner v. Panama R. Co.*, 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1931); *McMahon v. Pan Am. World Airways,* 297 F.2d 268, 269 (5th Cir. 1962).  A laches evaluation requires the court to determine whether it is equitable to permit the maritime claim to be enforced after a certain period of time has passed.  Importantly, when the analogous state statute of limitation period has tolled, the plaintiff has the burden of proving excusable delay in filing the suit late or that the defendant has not been prejudiced by the late filed suit.  *Barrios v. Nelda Faye Inc.*, 597 F.2d 881, 884-885 (5th Cir. 1979); *Watts v. Zapata Off-Shore Co.*, 431 F.2d 100, 112 (5th Cir. 1970); *Akers v.*

8

*States Marine Lines, Inc.*, 344 F.2d 217, 220 (5th Cir. 1965).

In this case, it is clear from the allegations of the Complaint that plaintiffs' claims against NOT sound only in tort.  Plaintiffs do not allege they had a contract with NOT, nor could they, as no such contract existed.  (R. Doc. 1, Articles I-XIII).  Therefore, the Louisiana one year tort prescription period, set forth in Louisiana Civil Code Article 3492, is the analogous state limitation period that applies to determine if plaintiffs' claims should be dismissed based on laches.

The FLAMINIA casualty occurred on 14 July 2012, two weeks after NOT loaded the DVB cargo aboard the vessel. (R. Doc., Article V, VII).  Thus, plaintiffs waited three years, one month and seven days after the incident occurred to file this suit against NOT. After the FLAMINIA casualty, plaintiffs filed the Limitation Action in New York on 7 December 2012.  The plaintiffs took no action against NOT in the Southern District of New York Limitation Action or any other legal proceeding until this suit was filed on 21 August 2015, even though they well knew that NOT had received the cargo in June 2012 and loaded the cargo aboard the FLAMINIA on 1 July 2012.

Since plaintiffs' Complaint was filed over two years after Louisiana's one year tort prescriptive period had tolled, plaintiffs have the burden of proving either excusable delay or the absence of prejudice to NOT to defeat a laches defense.  *Barrios, Watts, Akers, Morales, supra.*  But plaintiffs have not set forth in their Complaint any facts that would support a finding of excusable delay on their part or the absence of prejudice to

NOT to defeat the laches claim.

First, plaintiffs do not allege any facts in their Complaint to explain why they waited more than three years to file this suit against NOT.  Plaintiffs knew of NOT's involvement in storing and loading the cargo from, at the latest, the day the cargo was loaded aboard the FLAMINIA on 1 July 2012.  Plaintiffs filed their Limitation Action in the New York litigation in December 2012 and have vigorously and extensively litigated claims arising from the 14 July 2012 explosion aboard the FLAMINIA with numerous other parties for the past three years.  But they did not sue NOT in any proceeding until more than three years after the FLAMINIA incident in July 2012.  Plaintiffs have not alleged and, indeed, have no basis to claim that their delay in filing this suit against NOT over three years and one month after the incident should be excused.

Likewise, plaintiffs have not alleged any facts to establish that NOT has not been prejudiced by their inexcusable delay in bringing this suit.  The Fifth Circuit has held that there is a presumption that a defendant has been prejudiced by a plaintiff's late filing of a suit:

> There is a presumption that respondent has suffered by
> libelant's delay in bringing suit after the state statute of
> limitations would have run.

*McMahon v. Pan Am.*, 297 F.2d at 270.  See also, *Vega v. The MALULA*, 291 F.2d 415, 416 (5th Cir. 1961) ("passage of time beyond the analogous statute of limitation is presumed to have caused a substantial detriment").  There is no way plaintiffs can

overcome this presumption here.

 A review of the docket sheet for the consolidated Limitation Action in the Southern District of New York, Civil Action No: 12-cv-8892(SAS), entitled *In re M/V MSC FLAMINIA*, is an eye-popping experience; it currently has 786 docket entries, and involves hundreds of parties.[1]  Judge Scheindlin issued a recent opinion in that case in which she stated:

> This action was initiated in December 2012, and as its complicated procedural history demonstrates, it involves a large number of entities and thorny legal issues.

2015 WL 5671834, pg. 1 (S.D.N.Y. Sept. 25, 2015).

 In that mammoth litigation, plaintiffs and the other parties have been involved in approximately 85 depositions, approximately one million documents have been produced, and discovery has proceeded for the past three years concerning the facts and circumstances surrounding all aspects of the cargo carried aboard the vessel, the cargo loading operation, the stowage of the cargo, and the vessel's voyage.  To require NOT to respond to plaintiffs' allegations at this time in this suit, after so much discovery has taken place on all aspects of the FLAMINIA casualty in the Southern District of New York proceeding, without NOT having had an opportunity to participate in that discovery from its inception, is the essence of prejudice.  See, *Puerto Rican-Am. Ins. Co. v.*

---

[1] / While courts are generally precluded from considering outside materials under Rule 12(b)(6), courts can take judicial notice of certain external matters, including public records of other federal court proceedings.  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

11

*Benjamin Shipping Co., Ltd.*, 829 F.2d 281, 284-85 (1st Cir. 1987) (prejudice to defendant found when brought into suit three years after suit filed based, in part, on its inability to participate in discovery that was conducted for previous three years).

In sum, the allegations of the Complaint facially establish that this suit against NOT was untimely. There is no excuse for plaintiffs' late filing of this lawsuit against NOT, and NOT has been prejudiced by plaintiffs' inexcusable failure to file suit within the one year Louisiana prescriptive period given the voluminous discovery that has occurred in the Southern District of New York litigation. Accordingly, NOT's 12(b)(6) motion to dismiss for failure to state a claim based on the doctrine of laches should be granted, and all of plaintiffs' claims against NOT should be dismissed.

**3.      Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Cause of Action**

Plaintiffs' first cause of action asserts a claim for strict liability for NOT's failure to warn of the alleged dangerous nature of the DVB cargo under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §30701 n. 4 §(d)(formerly 46 U.S.C. §1304(6)) (hereinafter referred to as "§30701(4)(d)"). COGSA §30701(4)(d) provides in pertinent part:

> Goods of an inflammable, explosive or dangerous nature … whereof the carrier … has not consented with knowledge of their nature and character, … the shipper of such goods shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment. (Emphasis added).

Clearly, COGSA only applies to carriers and shippers of cargo and, significantly, §30701(4)(d)'s legal obligation is <u>solely</u> owed by a "shipper" of the dangerous cargo. *Senator Linie Gmbh & Co. KG v. Sunway Line, Inc.*, 291 F.3d 145 (2d Cir. 2002); *In re M/V MSC FLAMINIA*, 2015 WL 5671834 (SDNY Sept. 25, 2015).

Plaintiffs' Complaint does not allege that NOT was a "shipper" of the cargo, as they correctly could not make that allegation.  Instead, plaintiffs contend in their First Cause of Action that NOT "as the receiver, bailee and stevedore of certain chemical cargoes" was obligated under §30701(4)(d) to adequately warn and/or inform plaintiffs of the inherently dangerous nature of the cargo. (R. Doc. 1, Article XXV).  But given that this COGSA obligation concerning dangerous cargo is solely owed by the <u>shipper</u> of dangerous cargo, and NOT was not the shipper of the DVB cargo, plaintiffs have no cause of action under §30701(4)(d) against NOT.

Thus, there is no legal basis to support plaintiffs' allegations that NOT had a COGSA duty under §30701(4)(d) to warn or inform the FLAMINIA's owners and operators concerning the allegedly dangerous nature of the cargo loaded aboard the FLAMINIA in July 2012.  Accordingly, NOT's 12(b)(6) motion to dismiss this first cause of action should be granted, and plaintiffs' COGSA claim should be dismissed.

**4.**     <u>**Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Cause of Action**</u>

Plaintiffs' second cause of action asserts that NOT, as an alleged "receiver, bailee and stevedore" of the DVB cargo, is liable for failing to warn plaintiffs of the alleged

dangerous nature of the DVB cargo that was loaded aboard plaintiffs' vessel.  (R. Doc., Articles XXX, XXXI).  But plaintiffs have failed in their Complaint to cite a basis to allege that NOT, in its capacity as a terminal operator, had a legal duty to warn plaintiffs about the condition or nature of cargo owned and shipped by other parties, which was temporarily stored at NOT's terminal.  Additionally, plaintiffs have failed in their Complaint to cite any legal duty owed by NOT, in its capacity as a stevedore, to warn plaintiffs about the nature or condition of cargo owned and shipped by other parties, which plaintiffs agreed to carry on their vessel.  Certainly there was no contractual relationship between NOT and plaintiffs that would give rise to a duty to warn.  And plaintiffs have not provided any citations to any law – statutory, jurisprudential or arising from general principles of fault – to support the bald claim that NOT owed any duty to warn plaintiffs about cargo that, again, NOT did not own or ship.  Further, plaintiffs have not alleged facts to plausibly support their conclusory assertion that plaintiffs "could not reasonably have known that the specific, inherent dangerous nature of the DVB cargo" that they agreed to carry on their vessel.  This is a mere conclusory statement unsupported by any factual content, which is insufficient to satisfy *Twombly*.

It is axiomatic that in order to recover for negligence under federal maritime law, the plaintiff must establish, *inter alia*, that a duty was owed by the defendant.  *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).  It is equally axiomatic that whether a duty is

owed is a question of law. *Id.*; *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333 (5th Cir. 1993). Here, plaintiffs' Complaint does not identify any legal basis to assert that NOT, as terminal operator and stevedore, owed any legal duty to plaintiffs to warn plaintiffs, a vessel owner and operator, about cargo that NOT indisputably did not own and was not shipping aboard plaintiffs' vessel. NOT therefore maintains that the Second Cause of Action should be dismissed under Rule 12(b)(6).

**5.     Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Cause of Action**

Plaintiffs' third cause of action alleges that NOT was "obligated and duty bound to properly store and handle the DVB cargo at its terminal in New Orleans while it was in its custody and control during the period from June 21 to and July 1, 2012 prior to loading on the M/S MSC FLAMINIA." (R. Doc. 1, Article XXXVI). But plaintiffs failed to provide any legal basis to support the contention that NOT owed any duty to these plaintiffs concerning the storage and handling of the DVB cargo at its terminal, as plaintiffs were not the owner or shipper of the DVB cargo, nor did plaintiffs have a contract with NOT to handle the cargo in its terminal. Plaintiffs' failure to identify an applicable legal duty is fatal to their claims against NOT. *Canal Barge, In re Cooper/T. Smith, supra*. Accordingly, plaintiffs' third cause of action should be dismissed for failure to state a claim.

6.     **Rule 12(b)(6) Motion to Dismiss Plaintiffs' Fourth Cause of Action**

Plaintiffs' fourth cause of action contends that NOT was "obligated and duty bound to store and handle the DVB cargo in a workmanlike manner" in NOT's terminal. (R. Doc. 1, Article XL).   But the implied warranty of workmanlike performance that a stevedore may owe a vessel owner, which was recognized by the Supreme Court in *Ryan Stevedoring Co. v Pan Atlantic SS Corp.*, 350 U.S. 124, 134 (1956), has no application to NOT's actions as a terminal operator while it was involved in the alleged improper handling and storage of the DVB cargo on its terminal in New Orleans in June and July 2012.   There is no legal recognized warranty of workmanlike performance that extends from a terminal operator, such as NOT, to a vessel owner/operator, such as plaintiffs, with whom it had no contractual relationship.

Moreover, even if this implied warranty were applicable, the Fifth Circuit Court has held that the *Ryan* indemnity doctrine does not extend to disputes between vessel owners and stevedores over vessel and cargo damage.   See, *Gator Marine Services v. J. Ray McDermott & Co.*, 651 F.2d 1096, 1100 (5th Cir. 1981).

Accordingly, plaintiffs have failed to assert a viable claim for breach of the implied warranty of workmanlike performance against NOT for its storage and handling of the DVB cargo in its terminal.   Therefore, plaintiffs' fourth cause of action must be dismissed under Rule 12(b)(6).

16

**7.**      <u>**Rule 12(b)(6) Motion to Dismiss Plaintiffs' Fifth Cause of Action**</u>

Plaintiffs' Fifth Cause of Action seeks indemnity and contribution based on NOT's alleged breach of contract, breach of express or implied warranty, or other alleged misconduct.  (R. Doc. 1, Articles XLV, XLVIII, XLIX).  However, plaintiffs' Complaint fails to allege, much less establish, that there is any contract between NOT and plaintiffs and, moreover, that any contractual warranty existed between NOT and plaintiffs.

Since plaintiffs' Complaint does not allege there was a contract between plaintiffs and NOT, plaintiffs have no legal basis to assert a cause of action for breach of contract.  And, since there is no contract between those parties, plaintiffs cannot allege that NOT is liable for breaching any express warranty in the contract.  As discussed in the previous section, the implied warranty of workmanlike performance has no application to the parties in this litigation.

Moreover, the general maritime law recognizes only a few, very limited tort indemnity theories since the Supreme Court adopted comparative fault in *United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975).  Plaintiffs' Complaint does not allege any facts that would make any of those very limited tort indemnity theories applicable to this case and, accordingly, plaintiffs have failed to state a tort indemnity claim.

Plaintiffs' claim for contribution is equally meritless and unsupported.  In order to establish a right to contribution, plaintiffs must prove that NOT owed, and breached, a legal duty.  *National Marine Serv., Inc. v. Gulf Oil Co.*, 433 F.Supp. 913 (E.D.La. 1977)

aff'd, 608 F.2d 522 (5th Cir. 1979).  As discussed above, plaintiffs have failed to allege

any facts establishing that NOT owed any legal duty that would support a claim against

NOT for contribution.  There is, therefore, no basis, legal or factual, for plaintiffs to seek

contribution from NOT in this lawsuit, and plaintiffs' fifth cause of action should be

dismissed.

**8.**      **Rule 12(f) Motion to Strike**

Plaintiffs' Complaint in Paragraph I refers to this case being brought under "Rule

F of the Supplemental Rules for Admiralty and Maritime Claims."  But this action is not

a Limitation Action and, therefore, Supplemental Rule F has no application to this case.

Accordingly, the reference to Supplemental Rule F should be stricken in Article I and any

other portions of the Complaint.

## CONCLUSION

For the foregoing reasons, NOT respectfully requests this Honorable Court to

grant its 12(b)(6) motion and dismiss all of plaintiffs' causes of action based on laches or,

alternatively, for failure to state a claim upon which relief can be granted.  In the further

alternative, NOT requests the Court to grant its 12(f) motion to strike plaintiffs'

contentions under Supplemental Rule F.

Respectfully submitted,

MURPHY, ROGERS, SLOSS,
  GAMBEL & TOMPKINS

*/s/ Robert H. Murphy*
_____
Robert H. Murphy (#9850)
rmurphy@mrshola.com
Peter B. Sloss (#17142)
psloss@mrsnol.com
701 Poydras Street
Suite 400, One Shell Square
New Orleans, LA 70139
Telephone:  (504) 523-0400
Facsimile:  (504) 523-5574
*Attorneys for New Orleans Terminal LLC*


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that 23 December 2015, a copy of the foregoing pleading was sent to all counsel of record, either by operation of the Court's CM/ECF system, by hand, by e-mail, by telefax or by placing same in the United States mail, properly addressed, and first class postage prepaid.


*/s/ Robert H. Murphy*
_____

1916/4813

19