UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONTI 11. CONTAINER SCHIFFAHRTS-<br>GMBH & CO. KG *M.S. MSC FLAMINIA*,<br>ET AL. | CIVIL ACTION |
| VERSUS | NO: 15-3704 |
| NEW ORLEANS TERMINAL, LLC | SECTION: "J" (3) |

## ORDER AND REASONS

Before the Court is a *12(b)(6) Motion to Dismiss for Failure to State a Claim and 12(f) Motion to Strike* **(Rec. Doc. 8)** filed by Defendant, New Orleans Terminal, LLC ("NOT"), and an *Opposition* thereto **(Rec. Doc. 13)** filed by Plaintiffs, Conti 11. Container Schiffahrts-GmbH &. Co. KG "*M.S. MSC FLAMINIA*" ("Conti") and NSB Niederelbe Schiffahrtsgesellschalf MBH & Co. KG ("NSB"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from an explosion and fire aboard the vessel the *M.S. MSC FLAMINIA* ("the Vessel") on July 14, 2012. Plaintiff Conti is a German entity and the registered owner of the Vessel. Plaintiff NSB, also a German entity, was the operator of the Vessel and responsible for the manning, stores, maintenance, and repairs of the Vessel. NOT is a Louisiana-based LLC that

1

provided stevedoring services to Plaintiffs. NOT also operates a marine terminal at the Port of New Orleans.

In June 2012, NOT received, handled, and stored certain chemical cargo, which it loaded onto the Vessel on July 1. The explosion occurred two weeks later. Three crew members died in the accident, and several were injured. In addition, the Vessel itself suffered extensive damage, and many cargo containers were damaged or lost. After several parties filed suit against Conti and NSB, Plaintiffs filed a limitation action in the Southern District of New York on December 7, 2012. NOT is not a party to the limitation action.

Presently, the parties to the limitation action are conducting discovery on liability for the explosion. As part of this discovery, NOT produced documents on August 25, 2014. After receiving these documents, Plaintiffs allege that they first became aware that NOT may have been responsible for the accident. According to Plaintiffs, NOT received chemical cargo consisting of Divinylbenzene ("DVB") on June 21, 2012. NOT also received Material Safety Data Sheets concerning this chemical cargo, which contained information about the dangerous nature of DVB. The sheets directed NOT to protect the cargo from high temperatures and direct sunlight, as the chemical was explosive and combustible at high temperatures. Despite these instructions, Plaintiffs allege that NOT stored and handled the cargo in direct sunlight and subjected

2

it to high ambient temperatures. Plaintiffs allege that NOT's improper storage and handling caused the explosion.

Plaintiffs filed suit against NOT in this Court on August 21, 2015, within one year of their receipt of the documents. Plaintiffs alleged: (1) NOT was strictly liable for failing to warn Plaintiffs of the hazardous nature of the cargo; (2) NOT was liable for negligent failure to warn; (3) NOT was liable for general negligence; (4) NOT breached the implied warranty of workmanlike service; and (5) Plaintiffs were entitled to indemnity and contribution from NOT. NOT filed the instant motion on December 23. Plaintiffs filed an amended complaint on January 13, 2016, omitting the strict liability cause of action. Plaintiffs opposed the instant motion on January 19.

**PARTIES' ARGUMENTS**

**A. NOT's Arguments in Favor of Dismissal**

First, NOT argues that all of Plaintiffs' claims should be dismissed due to laches. According to NOT, laches is an admiralty doctrine used to determine if a complaint is time-barred. NOT contends that a Rule 12(b)(6) motion is the proper vehicle for asserting a laches argument. Because Louisiana imposes a one-year statute of limitations in tort cases and this time period has expired, NOT argues that Plaintiffs must prove that their delay in filing suit was excusable or that NOT has not been prejudiced by the delay. NOT contends that Plaintiffs knew at the time of the

accident that NOT had received the cargo and loaded it on the vessel. Because Plaintiffs waited almost three years to file suit, NOT claims that the delay was not excusable. Further, NOT asserts that the United States Court of Appeals for the Fifth Circuit presumes that the defendant is prejudiced by a late filing. NOT also argues that it suffered prejudice because it was not able to participate in the extensive discovery conducted in the limitation action.

Second, NOT argues that it is not strictly liable for failing to warn Plaintiffs of the dangerous nature of the cargo. Plaintiffs allege in their original complaint that this cause of action arises under the Carriage of Goods by Sea Act (COGSA). However, NOT contends that COGSA only applies to carriers and shippers of cargo. Only shippers of dangerous cargo owe a duty under COGSA. NOT argues that it acted as a receiver, bailee, or stevedore in this case. Thus, it cannot be strictly liable for failure to warn under COGSA.

Third and fourth, NOT challenges Plaintiffs' theories of negligent failure to warn and general negligence. According to NOT, Plaintiffs do not have any legal basis to assert that NOT owed a duty to warn Plaintiffs about the nature of the cargo that other parties owned and shipped. Likewise, as to Plaintiffs' general negligence claim, NOT contends that Plaintiffs did not cite any legal basis for asserting that NOT owed Plaintiffs a duty

to properly store and handle cargo. In the absence of a contract between it and Plaintiffs, NOT argues that no such duty exists.

Fifth, NOT argues that it is not subject to an implied warranty of workmanlike performance ("WWLP"). According to NOT, terminal operators like itself do not owe a WWLP in the absence of a contractual relationship. Further, NOT contends that indemnity does not apply to vessel and cargo damage claims in which a vessel owner sues a stevedore. Sixth, NOT argues that Plaintiffs are not entitled to indemnity or contribution. Indemnity is not available because NOT was not subject to a WWLP and because NOT and Plaintiffs did not enter into a contract providing for express indemnity. NOT also claims that Plaintiffs are not entitled to contribution because they cannot show that NOT owed and breached a legal duty.

Finally, NOT moves to strike language from Plaintiffs' complaint. The original complaint states that it is being brought under Rule F of the Supplemental Rules for Admiralty and Maritime Claims. However, NOT points out that this case is not a limitation action, rendering Rule F inapplicable. NOT asks the Court to strike any reference to Rule F from the complaint.

**B. Plaintiffs' Arguments in Opposition**

Plaintiffs first argue that the doctrine of laches is inapplicable in this case. Plaintiffs agree that the Louisiana statute of limitations for tort claims is one year. However,

Plaintiffs argue that the prescriptive period commences when the plaintiff acquires actual or constructive knowledge of the facts giving rise to the suit. In this case, Plaintiffs claim that they did not obtain actual or constructive knowledge of NOT's role in the accident until they received certain discovery responses from NOT in August 2014. Before receiving this information, Plaintiffs claim that they did not know that the cargo was temperature-sensitive or that NOT had improperly handled and stored the cargo, thereby exposing it to excessive heat. Plaintiffs point out that they filed suit within one year of this discovery. Plaintiffs also assert that their claim for breach of the WWLP is subject to a ten-year prescriptive period. Thus, Plaintiffs argue that their underlying claims have not prescribed.

Further, Plaintiffs assert that latches does not apply because their delay in filing suit was excusable and because NOT has not suffered prejudice. Plaintiffs argue that filing suit after prescription has accrued only gives rise to a presumption of laches. Plaintiffs claim that they can rebut this presumption by showing that their delay was excusable or that NOT was not prejudiced by the delay. Plaintiffs assert that their delay was excusable because they were unaware of NOT's involvement in the accident until August 2014. They claim that they did not know NOT was a proper defendant until that time. Also, Plaintiffs argue that NOT has the burden of showing actual prejudice, meaning that

6

NOT will be subjected to a disadvantage in establishing a claim or defense. According to Plaintiffs, no prejudice occurs when the defendant can protect its interests and prepare a case for trial. Plaintiffs argue that NOT did not suffer prejudice simply because it was unable to participate in discovery in the limitation action. According to Plaintiffs, the limitation action is a separate suit, and NOT will be able to engage in discovery pertaining to this specific suit.

Second, Plaintiffs note that their amended complaint eliminates any references to strict liability. Thus, NOT's arguments on this subject are moot. Third, Plaintiffs address NOT's challenges to their negligent failure to warn claim. Relying on the Restatement definition of the tort, Plaintiffs claim that NOT was a "supplier" with knowledge of the dangerous nature of the cargo. Plaintiffs assert that NOT received this information from documents that contained temperature-sensitive storage instructions and warned of the flammable nature of the cargo. Plaintiffs claim that NOT had a duty to deliver these documents to the ship. According to Plaintiffs, NOT also had a duty to warn them about any hazards associated with the cargo. They claim that the danger was not open and obvious and that they should not have known of the hazards without a warning.

Fourth, Plaintiffs defend their general negligence claims. They state that they are not required to fully outline each element

7

of their claim in their complaint. Generally, Plaintiffs assert that several courts have recognized negligence claims by shipowners against stevedores for damage to vessels and cargo. According to Plaintiffs, they alleged sufficient facts to give rise to the inference that NOT, acting as a stevedore, negligently handled and stored the cargo.

Fifth, Plaintiffs argue that NOT breached the WWLP. They claim that a stevedore owes an implied duty of workmanlike service to a vessel owner. A breach of this duty gives rise to a claim for indemnity. Plaintiffs contend that privity of contract between the stevedore and the vessel owner is unnecessary according to Supreme Court and Fifth Circuit precedent. According to Plaintiffs, the implied warranty extends to cargo and vessel damage because the Fifth Circuit cases questioning its application only did so in dicta. Moreover, Plaintiffs cite cases from other federal courts that have applied indemnity principles to cargo claims. In addition, this case involves personal injury claims as well as vessel and cargo damage claims. Plaintiffs also aver that the question of whether NOT was acting as a stevedore or as a terminal operator is a question of fact that should not be resolved by a Rule 12(b)(6) motion.

Sixth, Plaintiffs claim that they are entitled to indemnity and contribution from NOT. Because NOT breached the WWLP, Plaintiffs argue that they are entitled to indemnity. Also, they

state that they are entitled to contribution due to NOT's breaches of several legal duties, as explained above. Finally, Plaintiffs argue that NOT's motion to strike is moot because Plaintiff removed all references to Rule F in its amended complaint.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all

well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S.at 678.

## DISCUSSION

**A. Mooted Issues: Strict Liability and Motion to Strike**

First, Plaintiffs' amended complaint mooted NOT's arguments on strict liability and on its motion to strike. The amended complaint omits any strict liability claims and any references to Rule F limitation actions. Thus, the Court will not discuss these issues further.

**B. Laches**

NOT asserts that all of Plaintiffs' claims are time-barred due to laches. Laches is an equitable doctrine that looks to the analogous state prescriptive period to determine if the plaintiff filed suit timely. *See Mecom v. Levingston Shipbuilding Co.*, 622 F.2d 1209, 1215 (5th Cir. 1980). If not, the plaintiff must prove either (1) that the defendant was not prejudiced by the delay or (2) that the plaintiff had an excuse for its delay. *Watz v. Zapata Off-Shore Co.*, 431 F.2d 100, 111 (5th Cir. 1970). In Louisiana, a tort action is "subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage

10

is sustained." La. Civ. Code art. 3492. Courts have found that the plaintiff's injury or damage is sustained when the plaintiff obtains actual or constructive knowledge of the alleged tort. *Mistich v. Cordis Mfg. Co.*, 607 So. 2d 955 (La. Ct. App. 1992). The plaintiff has constructive knowledge when he "has sufficient information to excite attention sufficient to prompt further inquiry." *Bell v. Demax Mgmt. Inc.*, 824 So. 2d 490, 493 (La. Ct. App. 2002).

Assuming arguendo that the applicable prescriptive period is the one-year tort period,[1] Plaintiffs filed suit before the statute of limitations prescribed. In the context of a Rule 12(b)(6) motion, the Court accepts all factual allegations in the Plaintiffs' complaint as true. *Lormand*, 565 at 232-33. Here, Plaintiffs contend that they were unaware of NOT's role in the accident until August 25, 2014. Plaintiffs received discovery documents on this date that alerted them to the fact that NOT may have improperly stored and handled the explosive chemical cargo. Accepting these facts as true, Plaintiffs first gained actual or constructive knowledge of NOT's tortious behavior on August 25, 2014. Plaintiffs filed suit on August 21, 2015, just under one

---

[1] Plaintiffs argue that their breach of WWLP claim is subject to a ten-year statute of limitations. The Court will discuss Plaintiffs' WWLP claim below in Section C.

year after this discovery. Drawing all inferences in Plaintiffs' favor, the Court finds that the analogous state statutory period had not expired when Plaintiffs filed suit.

Further, Plaintiffs may defend against a laches claim by showing either a lack of prejudice to NOT or that their delay was excusable. *Watz*, 431 F.2d at 112. Here, Plaintiffs' late discovery of NOT's role in the accident justifies its late filing. As both NOT and Plaintiffs point out, the limitation action is an extensive, complicated lawsuit with many parties, claims, and thorny legal issues. In this context, Plaintiffs' late discovery of NOT's potential improper handling and storage is justifiable. Thus, the Court finds that Plaintiffs' delay was excusable. Considering prejudice to NOT is unnecessary.

**C. Breach of Implied Warranty of Workmanlike Performance**

NOT seeks dismissal of Plaintiffs' WWLP claim on the grounds that the Fifth Circuit no longer recognizes such a claim in this factual scenario. The breach of WWLP claim is intertwined with a legal concept known as *Ryan* indemnity. *See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124 (1956). In *Ryan*, the Supreme Court held that a vessel was entitled to indemnity from a stevedore for breach of the WWLP when the stevedore's improper stowage of cargo caused a personal injury. *Id.* at 132-35. The Supreme Court stated, "Competency and safety of stowage are inescapable elements of the [stevedoring] service undertaken ....

It is of the essence of petitioner's stevedoring contract. It is [stevedore's] warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." *Id.* at 133.

After this decision, courts began expanding *Ryan* principles.[2] For example, the Supreme Court held that the WWLP operated even in the absence of contractual privity between the vessel owner and the stevedore. *See Crumady v. The JOACHIM HENDRIK FISSER*, 358 U.S. 423, 428 (1959). The Fifth Circuit expanded *Ryan* indemnity beyond personal injury to cargo damage claims. *See F.J. Walker Ltd. v. Motor Vessel LEMONCORE*, 561 F.2d 1138, 1148 (5th Cir. 1977). However, courts soon began to whittle down the expansive *Ryan* doctrine.

Congress marked the beginning of the end of *Ryan* in 1972 when it amended the Longshore and Harbor Workers' Compensation Act ("LHWCA"). The amendments specifically overruled *Ryan* by eliminating liability of a stevedore to a vessel owner for indemnity in personal injury actions. *See* 33 U.S.C. § 905(b). Next, the Supreme Court held that each negligent party in a maritime tort case should be liable for its proportionate degree of fault. *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975).

---

[2] *See generally* Marie R. Yeates Phillip, *Contribution and Indemnity in Maritime Litigation*, 30 S. Tex. L. Rev. 215, 228-29 (1989).

13

In doing so, the Court overruled the old rule of divided damages, in which the damages were split equally between the negligent parties. *See The Schooner CATHARINE v. Dickinson*, 58 U.S. 170, 177-78 (1854). Thus, the *Reliable Transfer* decision marked the demise of indemnity and the rise of comparative fault principles.[3]

Following these changes, the Fifth Circuit began to scale back *Ryan* indemnity. *See Gator Marine Serv. Towing, Inc. v. J. Ray McDermott & Co.*, 651 F.2d 1096 (5th Cir. 1981). *Gator* involved a claim for cargo destroyed when a tug capsized. *Id.* at 1097. The vessel owner and the stevedore each claimed that the other's negligence caused the accident. *Id.* The district court found that both the vessel owner and the stevedore were negligent and allocated fault between them according to comparative fault principles. *Id.*

On appeal, the vessel owner argued that the stevedore owed it indemnity because the stevedore breached the WWLP. *Id.* at 1099. The Fifth Circuit stated that a vessel may claim indemnity against a stevedore even when the vessel is partly negligent. *Id.* at 1100. However, the Fifth Circuit found that the vessel's negligence was extreme enough to defeat its claim for *Ryan* indemnity. *Id.* Further, the Fifth Circuit questioned the continued vitality of *Ryan* in claims for vessel and cargo damage between a vessel and a

---

[3] *See* Phillip, *supra* note 2, at 239.

stevedore. *Id.* Pointing to its historic reluctance to expand the *Ryan* doctrine, the Fifth Circuit stated, "Disputes between vessels and stevedores over damaged cargo are best accommodated by a straightforward application of the usual maritime comparative fault system." *Id.*

The Fifth Circuit took a harder stance on *Ryan* five years later. *Bosnor, S.A. DE C.V. v. Tug L.A. Barrios*, 796 F.2d 776 (5th Cir. 1986). *Bosnor* also concerned a cargo loss and negligence on the stevedore's part. *Id.* at 778. Relying on its decision in *Gator*, the Fifth Circuit rejected the "all or nothing" *Ryan* approach in favor of a comparative fault analysis. *Id.* at 786. While *Gator* allowed for the possibility of *Ryan* indemnity when the vessel owner was not negligent, *Bosnor* foreclosed this potential claim entirely. Rejecting the argument that the vessel owner was not negligent, the Fifth Circuit stated, "[W]e did not restrict the application of the comparative fault principles in property damage cases to only those circumstances where the shipowner's negligence is great enough to preclude his recovery of *Ryan* indemnity." *Id.* at 785. Thus, the Fifth Circuit denied *Ryan* indemnity and restricted "the *Ryan* doctrine to the narrow fact situation in which it rose." *Id.* at 786.

Based on its holding in *Bosnor*, the Fifth Circuit clearly does not allow vessel owners to recover *Ryan* indemnity from stevedores for vessel and cargo damage claims. Here, Plaintiffs, the vessel

15

owner and operator, are requesting *Ryan* indemnity from NOT, the stevedore, on a cargo and vessel damage claim. The Fifth Circuit no longer recognizes such a claim. Plaintiffs argue that this case involves personal injuries, so *Ryan* indemnity is still available. However, the 1972 LHWCA amendments eliminated *Ryan* indemnity in personal injury cases. Drawing all reasonable inferences in their favor, Plaintiffs have not stated a cause of action for *Ryan* indemnity based on NOT's breach of the WWLP.

**D. Negligent Failure to Warn and General Negligence**

NOT argues that Plaintiffs failed to allege a proper legal basis for their negligent failure to warn and general negligence claims. However, Plaintiff's amended complaint states, "Defendant NOT had a duty to warn Plaintiffs Conti and NSB" of the dangerous nature of the cargo. (Rec. Doc. 12, at 7.) The amended complaint further alleges, "Defendant NOT . . . was obligated and duty-bound to properly store and handle the DVB cargo . . . ." These statements clearly allege the existence of legal duties owed by NOT to Plaintiffs. Plaintiffs' failure to provide legal citations is not fatal to their claims. Rule 8(a) only requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rules do not require extensive legal citations.

Further, even after the Fifth Circuit limited *Ryan* indemnity in *Bosnor*, courts of this district have found that stevedores owe

certain duties to vessel owners. Stevedores owe the duty to perform in a "proper, safe, and workmanlike manner. Failure of a stevedore to exercise reasonable care constitutes negligence." *Maurice Pincoffs Co. v. Dravo Mechling Corp.*, 697 F. Supp. 244, 249-50 (E.D. La. 1987), *aff'd sub nom. Maurice Pincoffs v. Dravo Mechling*, 880 F.2d 411 (5th Cir. 1989) (citations omitted). Courts of this district have also recognized that a stevedore owes a duty to inform a vessel owner of a condition that could potentially damage the vessel. *See id.* In these cases, the courts apply comparative fault principles and apportion the damages among the negligent parties. *See Agrico Chemical Company v. M/V BEN W. MARTIN,* 664 F.2d 85, 94 (5th Cir. 1981); *Gator,* 651 F.2d at 1099; *Maurice Pincoffs Co.,* 697 F. Supp. at 251. Thus, a stevedore's duty to a vessel owner exists independently of the *Ryan* indemnity doctrine.[4] Viewing the pleadings liberally, Plaintiffs have sufficiently alleged the existence and breach of these duties.

**E. Contribution**

Lastly, NOT contends that Plaintiffs are not entitled to indemnity or contribution. As discussed above, Plaintiffs are not

---

[4] In a pre-*Gator* case, the Fifth Circuit held that a stevedore owes a duty to a vessel regardless of whether privity of contract exists. *Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394, 401 (5th Cir. 1971). Even though it later limited the *Ryan* doctrine, the Circuit has not overruled this holding.

entitled to *Ryan* indemnity. However, "[u]nder general maritime law, an alleged tortfeasor may seek contribution . . . from one who may be comparatively negligent or a joint tortfeasor. Maritime contribution law provides for apportionment of joint tortfeasors' liability according to principles of comparative fault." *Ondimar Transportes Maritimos, LTDA v. Beatty St. Properties, Inc.*, No. 07-1223, 2008 WL 45793, at *3 (S.D. Tex. Jan. 2, 2008), *aff'd sub nom. Ondimar Transportes Maritimos v. Beatty St. Properties, Inc.*, 555 F.3d 184 (5th Cir. 2009). To state a claim for contribution, a potential tortfeasor must establish a breach of duty on the part of its potential joint tortfeasor. *Nat'l Marine Serv., Inc. v. Gulf Oil Co.*, 433 F. Supp. 913, 920 (E.D. La. 1977), *aff'd*, 608 F.2d 522 (5th Cir. 1979).

Here, NOT argues that Plaintiffs failed to establish a legal duty owed by NOT to Plaintiffs. As explained above, courts have recognized that a stevedore owes a duty to exercise reasonable care. The allegations in Plaintiffs' complaint, accepted as true, establish that NOT failed to properly handle and store temperature-sensitive, potentially explosive cargo and that NOT failed to warn Plaintiffs of the dangerous nature of the cargo. These allegations are sufficient to state a claim for a breach of the duty to exercise reasonable care. Thus, dismissal under Rule 12(b)(6) is unwarranted.

## CONCLUSION

Plaintiffs' claims for breach of the WWLP and for *Ryan* indemnity will be dismissed for failure to state a claim pursuant to Rule 12(b)(6). NOT's Motion to Dismiss is denied in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that NOT's *12(b)(6) Motion to Dismiss and 12(f) Motion to Strike* is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that NOT's *Motion for Leave to File Reply* **(Rec. Doc. 16)** is **DENIED** as moot.

New Orleans, Louisiana this 3rd day of February, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE